The next case on the call of the dock is agenda number 12, number 127946, People of the State of Illinois v. Carl Smith Jr. Adrienne Elizabeth Sloan, are you prepared? Please proceed. Good morning, your honors. May it please the court. My name again is Adrienne Sloan. I'm here with the Office of the State Appellate Defender on behalf of Carl Smith. And just speak as loud as you can. Yes, yes. It is well known that information taken out of context, be it a quote, sound bite, photograph, or in this case video footage, can create an appearance that differs from reality. Carl Smith was only found guilty because of two non-consecutive 20-second clips that Peter Schmidt took out of the relevant context of a full day's worth of surveillance footage. To quote the dissenting opinion in the appellate court, this case rises and falls on the two iPhone clips. And no one besides Peter Schmidt, a private individual with no meaningful relationship to this case, has ever seen the footage from the rest of the day. There's no way in this case to verify the clip's accuracy to ensure that Schmidt's selected clips showed what they claimed to. The State in this case used the clips, 40 seconds out of eight or more relevant hours of footage, 0.1 percent of what happened on the day in question, to create the appearance that Carl Smith committed residential burglary. But the defense was never able to examine or utilize the full footage. Without access to the full context of the day, Carl Smith's best opportunity to demonstrate reasonable doubt was taken from him. The Illinois rules of evidence exist to ensure the admission of reliable, fair evidence. This court should not find that the clips Schmidt selected qualify. Throughout the proceedings, this evidence was considered first and foremost as a potential duplicate. But duplicate, under Rule 1003, means an accurate reproduction of the original. And these clips do not provide an accurate or effective substitute for what they were supposed to have explained, the comings and goings of individuals to and from Whittington's apartment on the day in question. And for policy reasons, a finding that these clips are admissible under the duplicate exception encourages the virtually limitless admission of incomplete, unfair evidence under the rule. But all of the Fifth District justices did find that these clips were 1003 duplicates. And if this court chooses to do the same, then it should hold consistent with the dissenting opinion in the appellate court that the clips were inadmissible duplicates because they violated the provision of 1003 that it must be fair in the circumstances to admit a duplicate in lieu of the original. Counsel, at the trial court level, was there any contest as to the accuracy of the video clips? The accuracy of the clips themselves? Yes. So there's no contest that the clips themselves depicted Mr. Smith. What we do not know about the clips themselves is really anything that happened, of course, in the gaps and anything that happened before and after the clips. Also, because... But you're not, you've never taken the position that the clips are of something that didn't happen, that they're not accurate. I don't take the position that the clips themselves are not accurate. I take the position that the clips are unfair duplicates because they don't paint a picture that the original would have. The original would have shown everything that happened on the day in question, would have shown every time Smith entered the apartment, which is important because it's undisputed in this case that Mr. Smith was invited into the apartment on the day in question. And so with respect to a duplicate, is it required that it encapsulate the entire, the entirety of the video? It can't be a portion and be a duplicate? So a duplicate under the rule is that which recreates at the very least all of the material evidence from the original. And that's supported by the many cases that I cited in the opening brief, all which, when they do admit edited duplicates, which that sometimes does happen, it is emphasized that those edits don't affect the, affect the... There's no material omissions between the duplicate and the original. So everything that's omitted is either irrelevant, repetitive, not necessary to this case. Here, what we don't have on the original, or what we do have on the original, would have had on the original and don't have on the duplicates, is very relevant, very important to our case. And it's also... In part, aren't you arguing that this is an issue of completeness? Let's say it was the original that was admitted, but just snippets of the original. Well, if this was the original that was... If this was the original that was admitted and just snippets of the original were admitted, what would have happened was that the defense would have had the chance to see the full original and have the opportunity to utilize pieces of evidence from the original to its own advantage. So if the State wanted to introduce these clips, but they were an original, then what would have happened in that situation was the defense would have used the evidence that would have been helpful to its case as the rest of its evidence. But here, the defense didn't have any knowledge of or participation in the copying process, leading to the creation of the duplicate. And it's not only that just the defense didn't participate. Neither party participated. Even the investigating officer in this case never even saw the original surveillance footage. The State in this case admitted a duplicate based on an original that it had never seen. And in this circumstance, there was no way to ensure the duplicate's accuracy, rendering the evidence unfair under 1003. Counsel, do you think the State acted in bad faith? I think that there is an argument to be made for bad faith, yes. But preliminarily, under 1003, it's not a bad faith analysis. 1003 bars the evidence if it's unfair in the circumstances, which it is here. If evidence is found unfair under Rule 1003, and this Court chooses to move on to 1004, which we would argue that it should not because that would invalidate the fairness requirement altogether if unfair 1003 evidence can simply move on to 1004. However, if this Court does choose to do so, the circumstances here do indicate that the State acted in bad faith. The investigating officer knew that there was a full surveillance video available the moment he began investigating this offense. And when asked on cross-examination what he did with that knowledge, he said nothing. Well, Counsel, wasn't the officer told by the gentleman who provided the clips that I'm going to get the video for you? I mean, was there any discussion that made it apparent to the officer that it was only going to be a couple of clips versus the entire video? The problem is that Officer McCreary That's a yes or no? So, yes, Mr. Schmidt stated that he would provide the video evidence. There is no evidence that Officer McCreary did anything he could to verify what Mr. Schmidt was doing or that he even took the step to view the surveillance himself. And again, he was in the apartment on the day the investigating officer was in the apartment on the day the offense was committed, and he was again in the apartment the day after. At both of those times, he was in the same building as the surveillance footage. He made the choice not only to not attempt to copy it, but to not even look at it. And in this case, it's also unclear as to whether once the officer realized that all he was receiving were these clips, he may have still had time to create a full copy or do something aside from rely on Schmidt's iPhone clips. So didn't he found out about the fact that he didn't have the entire clip the same day that the clip would have been automatically destroyed, or was it the day after? It was on the same day. So it's unclear how the timing lines up. When he was there, he still had time, or he did not have time. But what is clear is that once it did automatically overwrite, there were no steps taken whatsoever to even attempt to recover it. Instead, the State charged Schmidt with Class I residential burglary one day after the video was destroyed, knowing at that point that the defense would never have the opportunity to examine or utilize to its advantage the full video. The State had the responsibility to preserve the only evidence it had to substantiate a residential burglary charge. Counsel, one more thing. I'm sorry. So are you conceding that it's a duplicate, and you're saying that it's unfair to admit it? No, we're not conceding it's a duplicate. So we would argue that it's not a duplicate for 1003 purposes because it's not an accurate reproduction of the original because, again, it doesn't encapsulate all material evidence from the original. However, if this Court does choose to find that it's a duplicate, we would go on to argue that it's an inadmissible duplicate for being too unfair under 1003. To continue on about 1003 fairness standards, the advisory committee also states that a reason that the original may be required and a purported duplicate may be inadmissible is when only part of the original is reproduced and the remainder is either needed for cross-exam, may qualify the part offered, or may be otherwise useful to the opposing party. And that's exactly the case here. The full original was needed to explain the context of the day. If the State had advanced the full surveillance footage, again, it would have shown every time Whittington and Smith entered the apartment and exited the apartment on the day in question, which is important where it's undisputed that Mr. Smith was invited in at some time during the day. Also, and this is really significant, Whittington testified that sometime between leaving the apartment around 1 p.m. and returning home around 6 p.m., his door became damaged. The clips don't show this, and Schmidt testified that nothing happened between the clips. Again, the advisory committee states that the purported duplicate is inadmissible when the omitted remainder from the original may have been useful to the opposing party. It certainly could have been useful to Smith to have evidence explaining when Smith was allowed in, what time Whittington left, and how the door became damaged. Unquestionably, then, the clips did not serve equally as well as the original. So, again, we would argue that these clips, which are unfair duplicates, should not move on to be analyzed under 1004. If evidence is too unfair in the circumstances to be deemed to be admitted as a 1003 copy, but that same evidence can simply go on to be admitted under 1004, then there's no meaningful purpose to 1003's fairness safeguards. I mean, getting to that, it doesn't make a lot of sense to me that these clips are viewed under 1004 at all. Because it talks about other evidence of the contents. Right. If it's destroyed. Well, the other evidence of the contents, as far as the snippets go, the clips go, are the duplicates. Right?  We would agree. So we would agree. We would argue. I mean, the clips should really be viewed under 1003, not 1004. Yes, we would agree. Now, the evidence under 1004 in this case, and there was that evidence, and that's Schmidt's testimony as to what he saw on the video that was destroyed that we don't have clips on. Right, correct. So that would be the 1004 testimony. Right, right, correct. But the State, we absolutely agree with that characterization. We would argue that something that is considered as a duplicate under 1003, it doesn't make sense for it to move on to 1004. 1004, the purpose of it really wasn't for failed 1003 evidence or evidence that could potentially qualify as a duplicate. However, just because the State did argue that the evidence is admissible under 1003, or if it's not, it should move on to 1004, I'm making the argument now. Right. But you're not arguing that Schmidt's testimony about what was on the tapes, the parts that were destroyed, is inadmissible under 1004, right? Have you made that argument? So certainly the clips are admissible under 1004. We would argue that Schmidt's testimony is inadmissible as 1004 other evidence because, again, 1004, like 1003, is a rule which is focused on fairness. And this circumstance really isn't fair because without the defense having the opportunity to have seen the entire surveillance footage, it's not fair that Schmidt's allowed to testify only about the clips, which are the most incriminating portions for my client. Also, it's unclear in this case how much of the actual original that Mr. Schmidt did watch. Another thing is, what many courts do when they consider testimony about lost original evidence under 1004 is they consider the testimony in terms of a 403 relevance test. So we would argue, again, that this evidence is more prejudicial than probative. But another option for this Court would be, and a lot of the Federal cases do do this when they move on to a one or when they remand to the trial court for a 403 relevance test. In People v. Hale, the Court did the same thing. They found that the evidence was — sorry, it's Hale v. Baltimore City. The State found that the evidence was admissible under 1004, but was subject to a 403 relevance test. In State v. Miranda, the Court found that the clips were — or, excuse me, the testimony was admissible under 1004. However, it was still too unfair in the circumstances because it had been a long time since the person viewed the footage, because it had been a long time since trial. Because we didn't know how much the person who created the substitute evidence saw of the original, it would be still unfair under Rule 403. Counsel, if we were to determine that the evidence, the two clips that we're talking about, were not duplicates, then there's no need to address the fairness question as part of Rule 1003, right? If it's not a duplicate, then that doesn't apply. So if the clips are not duplicates under 1003, it is true that then the only way the clips would be potentially admissible is under 1004. However, because 1004 is still focused on fairness, and the advisory committee actually even suggests that 1004 cares more about fairness than 1003, the clips would still be admissible under 1004, either for that reason or due to all the circumstances that indicate bad faith that I explained earlier. The function of 1004 is to admit other evidence where there's no original that exists and there's no duplicate exists. So it stands to reason that reliability is more of a concern for 1004 other evidence because accuracy is less present. Where 1004 admits evidence that's a non-original and a non-exact copy, it's even more important that before that evidence is admitted, it can be proven with certainty that it shows what it purports to show, and these clips do not meet that threshold. Again, alternatively, this Court can find that 1004 disallows the evidence here because the circumstances leading to the admission of the clips do indicate bad faith. And to be perfectly clear, this case need not turn on bad faith. In order to preserve the integrity of the rules, we would argue that the clips are – if the clips are found unfair under 003, this Court should not even undergo a 1004 analysis, and if it does, it should find that the unfairness of the clips and corresponding inadmissibility under 1003 means that they are also inadmissible under 1004. But if this Court does choose to undergo a bad faith analysis, the circumstances here indicate that the State acted in bad faith. Again, Officer McCrary knew the surveillance video existed, did nothing about it. He didn't take steps to even view it on the two times he was there to investigate this offense, and once it became clear it automatically overwrote, he did not attempt to recover it. The State asserts that automatic overwriting shouldn't count as destruction for 1004 purposes, but here litigation was foreseeable. The State, again, charged Smith with Class I residential burglary a day after the video was destroyed, and at that point it was well aware that the defense would never be able to use the full video to its benefit. The State had a responsibility in this case to preserve the only evidence it had to substantiate a residential burglary charge, and not doing so shows bad faith. There are several avenues by which the admissibility of these clips can be analyzed, but at their core, the Illinois rules of evidence are primarily concerned with accuracy and fairness. Under the rules, misleading evidence is not admissible. Thus, neither 1003 nor 1004 allow for the admission of the clips that Peter Schmidt took out of context. If there are no other questions, we would ask that this Court reverse Mr. Smith's conviction for residential burglary and remand for a new trial barring the admission of the clips. Thank you. Any questions? Okay. Thank you. Mr. Hemmer? Good morning. May it please the Court, Deputy Solicitor General Alex Hemmer for the people of the State of Illinois. The trial court here acted within its discretion in admitting into evidence two video recordings that showed defendant approaching the victim's apartment.    and then exiting it on the day of the burglary. As the trial court held, the evidence was admissible under either Illinois rule of evidence 1003 as a duplicate of footage taken by a closed circuit surveillance system, or under rule 1004 as other evidence of that footage. Both rules get you to the same place and for similar reasons. The key question under rule 1003 is whether admission of a duplicate is unfair. Here, the trial court acted within its discretion in concluding that admission of the recordings was not unfair, essentially because they were made by an unbiased third party. The key question under rule 1004 is whether the proponent of alternative evidence lost or destroyed the original evidence in bad faith. Here, the trial court correctly concluded that the people did not lose or destroy the original video evidence in bad faith. Instead, it was automatically deleted after 48 hours. And defendant's additional arguments, including his contention that a common law diligence requirement requires exclusion lack merit as well. Unless the Court has a contrary preference, I'll start with rule 1003 and then return to rule 1004 and then turn to the other issues. The trial court acted within its discretion in concluding that the recordings were admissible under rule 1003. That rule provides that a duplicate of a writing or recording is admissible, quote, to the same extent as an original unless either a genuine question is raised as to the authenticity of the original or in the circumstances it would be unfair to admit the duplicate in lieu of the original. So do we need the entire video clip? Here we have two snippets versus the entire video clip. Well, so I want to distinguish between the kind of two issues that defendant has raised in really the two parts of the rule. I don't think there is a reasonable argument that a partial duplicate of the kind that you have here is not, as a legal matter, a duplicate under the rule. The parties kind of went back and forth on that in the briefs, and defendants' counsel talked a little bit about that this morning. But I think really at bottom there is no good argument that a partial duplicate is not a duplicate, because otherwise you'd need to include kind of the entire video, the entire recording, you know, in every trial. I think defendant has tried to kind of introduce a new standard about materiality, but that word is not in the rule, and there's no case that defendant cites or that I'm aware of adopting that as the kind of test for whether something is a duplicate. So that leaves the second issue, which is whether a partial duplicate like the kind we have here is unfair. You know, I think the most important point is that all of defendant's arguments about why the partial duplicates here were unfair are the exact same arguments that defendant made to the trial court in the first instance, that it wasn't unfair, that it was unfair to introduce the recordings because the original footage wasn't preserved, and so defendant couldn't show the jury any exculpatory evidence that might have existed on the original footage. No, ma'am.  I think the most important point here is that the trial court rejected the argument that the defendant is making today, and the trial court rejected it. And so defendant's burden here, as in the appellate court, is to show that the trial court abused its discretion in doing so, and that means he has to show that no reasonable person would adopt the trial court's view that the admission of the duplicates here was fair. And defendant doesn't even really attempt to make that showing. I don't think he contests that the abuse of discretion standard applies, but he doesn't cite it or acknowledge it in his briefs or discuss it with the court. And that's not surprising because the trial court's decision is well-supported and it's consistent with case law from other jurisdictions. The recordings were taken by a third party, defendant's landlord, who testified at the pretrial hearing as to exactly what he saw on the closed circuit surveillance video, not only the duplicates but the original video. He testified under oath that defendant was the only person to approach the victim's apartment during the relevant time period, which is why he only re-recorded that aspect of the footage. Defendant's argument boils down to, although he doesn't use these words, well, the landlord could have been lying, but defendant identifies no nonspeculative reason that the landlord would have lied, and he did not make any genuine attempt to impeach the landlord on that basis, either during the hearing or in front of the jury at trial. And so that falls far short of what defendant would need in order to surmount the abuse of discretion standard. And as I said, that result is consistent with the results reached by cases in other jurisdictions, including the Ohio Court of Appeals' 2015 decision in Jones, which we cite in the brief, which confronts essentially the same fact pattern and comes out exactly the same way. I don't think so, Your Honor. I mean, for essentially the same reason I just gave, which is that the trial court has an enormous amount of latitude to decide whether the admission of a partial duplicate like this is fair or unfair. Defendant's counsel this morning talked a lot about, you know, the good faith or bad faith of the officer, and the trial court is free to conduct, as he did here, an evidentiary hearing before the jury is impaneled about whether the State, the police, acted in good faith in trying to, you know, sort of obtain the original video. That's what happened here. The trial court heard the testimony of the landlord. He heard the testimony of the officer. And he -- Ginsburg-Mr. Hemmert, I mean, isn't the evidence suspect? First of all, you have the landlord having more sense than the officer. But with today's world and technology, there's so much that can be done with a video. And, you know, what is the foundational purposes of our, you know, evidence? If you can do something like this. Maybe in this case, I don't know, but clearly, we don't know if that was used in any way or sliced, you know, spiced, or whatever they do to it. But it's suspect, no matter who took it, because it's not from the original that was done professionally. Hemmert, I hear you, Madam Chief Justice, and I want to take that very seriously. I mean, I do think at bottom this is ‑‑ Ginsburg-But I am serious, by the way. Hemmert, this is a case about a video in which there is no argument. There has never been an argument. And, in fact, I think my colleague conceded that what is shown on the recordings is accurate. There's no argument that the landlord or anyone else here did any kind of slicing or editing to, you know, to change what was on the video. And if there were any ‑‑ in a case in which there was a serious concern that that had happened, of course the recordings could be excluded. And the trial court retains a tremendous amount of latitude to conduct that inquiry into what occurred and determine whether, under the circumstances, the admission of ‑‑ Kennedy, I don't think that's quite fair, Your Honor. I mean, again, there was an evidentiary hearing here, and the landlord, Schmitt, testified at that hearing as to what he saw on the original video and what he did to get the video off of the closed circuit surveillance system and onto a phone. And, you know, of course it's always possible that, you know, there's something in that testimony was that maybe he misremembered or something like that. The defendant has never identified any reason to question his testimony, didn't do it at trial, hasn't done it on appeal, hasn't really raised any nonspeculative reason to disbelieve that account. So this is not a case in which, you know, what occurred in the hallway is a complete unknown. We have the landlord's testimony in the pretrial hearing about exactly what occurred. And to Justice Burke's question earlier, you know, if the video had been excluded here, what would have happened is the landlord would just have testified at trial as to everything that he saw. And so this is, I think, a case in which, you know, there's a lot of commentary and commentary in the treatises about how the purposes of these rules, of 1002, 03, and 04, is to ensure that the most accurate evidence is introduced at trial on the thought that secondary evidence of this sort is more likely to assist in fact finding than to impede it. And with respect, I think that's exactly what happened here. We have video recordings of the only portion of that afternoon in which someone approached the victim's apartment, and those video recordings are the best evidence of what occurred. Had they been excluded, the landlord simply would have testified instead. And I don't think there's any real argument that that world is a better one for the purposes, for fact-finding purposes. So we've been talking a lot about Rule 1003. I want to also make sure to spend a little bit of time on Rule 1004. Rule 1004, as we've been discussing, provides that other evidence of a writing or recording is admissible under any of four circumstances, including, as relevant here, where the original has lost or has been destroyed unless the proponent of the evidence lost or destroyed it in bad faith. And the trial court correctly determined that that standard was met here, too. A rerecording of original footage is other evidence of the contents of the original footage, just like eyewitness testimony would be. And the people did not lose or destroy the original record footage in bad faith. In fact, the people didn't lose or destroy the original footage at all. It was automatically erased after 48 hours. If something is unfair under 1003, can it come in under 1004, after a trial court finds it to be unfair? Well, so I want to back up for one second, Justice Berk. So I think in his opening brief, Defendant made a kind of argument that the parties in the court has to kind of choose between 1003 and 1004 at the outset. You know, you just have to sort of choose one route or the other. And something that looks like a duplicate just can't be considered under Rule 1004. And I don't think that's right. And I think Defendant has kind of moved away from that position to the one that you just kind of articulated, which is where something is unfair under Rule 1003, it can't come in under 1004. I think it will often be true descriptively that something that can't come in under 1003 because it's unfair can't come in under Rule 1004 either. So, you know, I could imagine a world where something doesn't come in under Rule 1003, you know, because the proponent of the evidence lost or destroyed the original in bad faith. That's the language from 1004. In that world, the two standards are just kind of, they're parallel. And something can't come in under either. In other cases, you know, something might not come in under 1003 because the prejudicial effect it would cause, you know, substantially outweighs the probative value under Rule 403. And in that case, it wouldn't come in under 1004 either because 403 takes precedence over 1004. You know, so I guess my answer is generally, you know, generally it will be true that something that's unfair can't come in under 1004. I don't know that there is a kind of right-line rule, though, that says that because something is unfair under 1003, it can't come in under 1004. I would suggest it's a very abstract question and not one that the Court kind of needs to resolve today, especially because, as we've discussed, the trial court here heard all of these arguments and concluded that admission of these videos would be fair under 1003, and defendant hasn't come anywhere close to showing that that conclusion was an abuse of discretion. And so because the evidence was fair under 1003, it doesn't matter whether, you know, there's kind of — so we've discussed kind of the legal question, which is the one that we've just been discussing. There's also a factual question. You know, defendant argues, I think, that the videos should not have been admitted under 1004 because the State lost or destroyed the original footage in bad faith. You know, again, that's objectively not true. As the record reflects, the original footage was automatically deleted after 48 hours. To the extent defendant's argument is that the loss should be attributed to the State because the investigating officers should have taken steps to secure the original footage before it was deleted, again, the trial court heard that argument and rejected it. And defendant identifies no reason that conclusion was an abuse of discretion. Counsel, what about being unfair again? Counsel raised the point today that part of the defense would be that other people came in and out of the apartment, and this way he can't show who came in and out of the apartment, not only himself, and that he was actually invited in. So wouldn't that be unfair if he couldn't show who else came in and out? I don't think so, Your Honor. I mean, again, just as a, you know, preparatory matter, I know the Court understands this, but all of these arguments were presented to the trial court. So the question isn't whether we think it's unfair, but whether we think the trial court abused its discretion in concluding that it was fair. I don't think, though, that that makes it unfair. I mean, defendants – I think defendant has two kind of arguments on this point. One is, well, you know, defendant himself exited the apartment early – earlier that day, and the footage doesn't show that. But I don't really think that's – that's all that helpful to him. I mean, I don't think defendant has ever really argued that, you know, any of this footage shows him leaving the apartment at that earlier time, to the extent defendant's argument is, well, other people might have entered and exited the apartment on the footage that wasn't reproduced. We have the landlord's, you know, testimony at the pretrial hearing that no one did. And again, defendant has never identified any reason why the landlord would have been lying about that fact. So I think to conclude that there was something there on the video that would have been helpful to defendant, you know, necessarily, like, you have to have some reason to believe that the landlord was lying. And we just don't – this is not a case, for instance, in which any evidence was ever introduced that the landlord and defendant had some sort of history. The landlord had a reason to want to get defendant, you know, to kind of falsely accuse him. This is – this is, as defense counsel acknowledged, essentially a completely disinterested third party who took all of this, you know, original footage and made it a video recording. I do want to address the kind of two other issues in defendant's briefs. I mean, the first is whether the kind of common-law diligence standard required the exclusion of the video recordings. I think this is the – you know, this was presented especially in the PLA. As we explained in the brief, defendant is wrong that the recordings should have been excluded under some sort of diligence rule. That's for two reasons. First, that rule has been abrogated. It's the – it's the rule that the Court's Special Committee on Evidence expressly stated was abrogated by the promulgation of the rules. And even if it weren't, the diligence rule would not have required exclusion here. The cases that defendant cites don't apply a kind of freestanding rule that the proponent of secondary evidence must always show diligence in order to introduce secondary evidence. They just require a showing of diligence when there's some question about whether the original was actually lost or destroyed. The Seventh Circuit's opinion in McGaughy, which we cite in the brief, talks about this. Here, there's no question that the original was lost, and there's no question about how it was automatically overridden by the, you know, by the system after 48 hours. And so a diligence requirement would have had no purpose here. Finally, I want to briefly address the Taylor issue that defendant addresses at the end of his briefs. You know, as I think the Court's aware, Taylor concerns the separate legal issue, which is the applicability of the silent witness theory, whether video evidence can be properly admitted as substantive witness evidence rather than as demonstrative. Defendant, though, has repeatedly forfeited and at the appellate court expressly waived any argument that the recordings here were inadmissible on this ground. He didn't present this issue in his post-trial brief. He didn't present this issue in his opening brief at the appellate court and in his appellate court reply brief. He affirmatively waived any reliance on this issue, arguing that Taylor was inapplicable to his best evidence challenge to the admission of the videos. So the Court should not, you know, address the Taylor issue here on waiver grounds, even if it were inclined to do so. You know, defendant doesn't seem to really want the Court to engage in a Taylor analysis. He just asks for a remand. But, of course, every member of the appellate court panel did address Taylor and, too, disagreed with him as to the applicability of Taylor to the facts of his case. So he's obtained everything below that he asks the Court to grant him here. So if the Court has no further questions, we would ask that the Court affirm the appellate court's judgment. Thank you, Mr. Carroll. I just have a few brief points. To be clear, I am not arguing that the only reason these clips could have been inaccurate is because Schmidt may have been lying. I am arguing that this case shouldn't completely turn on evidence that was collected by Mr. Schmidt. No one else in this case, not the State's attorney, not the investigating officer, and especially not the defense attorney, who could have used the rest of the day to its advantage, got the opportunity to see the original. There's no showing, you know, without the original evidence, there's no, and without having seen the full surveillance footage, there's no showing that the time or date stamp was correct, that the clips, there wasn't a skip in the time period that Mr. Schmidt didn't record. And also, the State continually states that there's no non-speculative basis for the contention that Schmidt wasn't acting in bad faith. Where's the non-speculative basis for the contention that he was acting in good faith? The record doesn't show this. Who knows if he really didn't like Mr. Schmidt, he didn't want him in his apartment, he was best friends with Mr. Whittington. We don't know. That's why an entire case, the entire reason Mr. Schmidt was convicted of Class I residential burglary and went to prison for six and a half years, shouldn't depend on these clips. And the State also argues that if the clips weren't admissible, the landlord could have had the opportunity available to the defense to make more inquiry into the landlord. Well, the problem is that although, so although the defense could have maybe cross examined Mr. Schmidt showing, to try to show that there was a reason that he didn't, that he, that he didn't make an accurate recording, the defense was really, had a challenge here because what the defense couldn't do was ask him, was ask about what else happened on the original surveillance footage because no one had it but him. And again, even if he wasn't lying, even if he was making the best faith effort possible, even if defense counsel had asked, was there any other reason you wouldn't have wanted to do that, the case shouldn't depend just on something collected by Mr. Schmidt that no one else had the opportunity to see. The State argues that if the clips weren't admissible, the landlord could have testified. Even assuming that's true, testimony about the clips would have given a stronger opportunity for the defense to cross examine. The rules of evidence regarding documentary evidence exist. These fairness principles exist. As an acknowledgement, the documentary evidence when submitted to the fact finder is taken as true. If Schmidt had simply said that he saw this happen on the clips and he saw something in between it, that wouldn't have been as strong as the jury seeing these two clips and not seeing anything else. Also, this is very significant. The State argued that the video shows the only time someone approached the apartment on the day in question. That's incorrect. Again, Mr. Smith was invited into the apartment on the day in question. And also, the door was damaged. The clips do not show the door being damaged. And Mr. Schmidt testified that there's nothing that happened in between the two clips. Someone came and damaged the door, according to the State's theory, according to Mr. Whittington's testimony, and that's not on the clips. Finally, I would just state again that if evidence is unfair under Rule 1003, it should not be analyzed under Rule 1004. Doing so eviscerates the fairness requirement of 1003. In terms of the best evidence rule, our argument is that the best evidence rule is a complement to the Illinois rules of evidence, that the diligence requirement is a facet of a 1004 bad faith requirement. However, if this Court does find that the best evidence rule has been overruled, it's not outcome determinative to our case. If this Court does choose to focus on the best evidence rule's diligence requirement, this Court should at the very least not find that Officer McCrary's actions here were diligent. The decision to be in an apartment with a surveillance footage that's available to you and not copy it and not even watch it is not diligent police work. Finally, in terms of Taylor, while I would argue that we did not waive Taylor, it's again not outcome determinative. Some of the foundational issues with the clips here do contribute to their inadmissibility under the rules. However, even if the foundation was purposely laid, the evidence was so unfair here that it should be found inadmissible under 1003. Again, the defense never got an opportunity to even view the full footage or make a copy of it. We would just argue, if there are no other questions, that this evidence is so unfair that the trial court abused its discretion in admitting it. Thank you. Case number 127946, People of the State of Illinois, versus Carl Smith, Jr., will be taken under advisement as agenda number 12. Thank you, Mr. Solicitor General Deputy Alex Hammer, for arguing before us today, and Adrian Sloan for your arguments today.